**Original filed 1/22/07**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX EDIN HERNANDEZ,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>J. MORROW, Et Al.,<br><br>　　　　Defendants. | No. C 02-4936 JF (PR)<br><br>ORDER OF SERVICE |

Plaintiff Alex Edin Hernandez is state prisoner who is incarcerated at Pelican Bay State Prison ("PBSP"). In this pro se civil rights action he alleges the violation of his constitutional rights by medical staff and prison officials at PBSP. The Court now reviews the operative first amended complaint under 28 U.S.C. § 1915A(a).

**BACKGROUND**

Plaintiff alleges that in 1985 he suffered a gunshot wound to his back which required surgery and left him with chronic and severe lower back and leg pain. In 1999, while incarcerated at PBSP, he sought medical attention for the pain, which was not being alleviated by his prescribed medication. On his first visit to see PBSP doctor Dr. Morrow on September 7, 1999, his request for a double mattress to ease the pain and enable him to sleep through the night was denied, as was his request for an MRI.

On his second visit to see Dr. Morrow because of continuing pain on September 27, 1999, his renewed request for an MRI was denied, and he was prescribed medication which he had told the doctor he had already been prescribed and did not ease the pain.

On October 19, 1999, Plaintiff was seen by Dr. Pistone, who granted his request for a double mattress. Because Plaintiff was still not receiving appropriate medication for his pain, however, he again asked to see a doctor. On November 2, 1999, he was seen by Dr. Menendez, who told him that he was a candidate for an MRI, and said he would refer Plaintiff to the prison's orthopedic specialist. On December 1, 1999, Plaintiff was seen by the orthopedic specialist, Dr. Lau, who also recommended that Plaintiff be sent for an MRI. The MRI was performed at an outside hospital. On March 22, 2000, Plaintiff had a consultation about the MRI results with a non-prison orthopedic specialist, who told Plaintiff he had degenerative disk disease with a central bulging protruding disk at L4-5. Plaintiff agreed to be sent out to see a neurologist for a consultation and possible surgery.

From late March through August 2000 Plaintiff was seen by different prison doctors for his ongoing pain. When asked when he would be sent to see the neurologist, he was told to write to the prison's health care manager, Dr. Winslow. Plaintiff wrote to Dr. Winslow several times in May and early June 2000, but never received a response. He also filed an administrative appeal on the matter, but it was not answered. After writing to attorneys at the Prison Law Office (which was representing PBSP prisoners in a class action), attorney Steven Fama spoke to Dr. Winslow on Plaintiff's behalf, and only then did he get a referral to a neurologist. On September 23, 2000 he was seen by a non-prison neurologist, who told Plaintiff that one of his options was surgery.

On November 7, 2000, Plaintiff saw PBSP doctor Dr. Nguyen, and asked for his medication and mattress chronos to be renewed. Dr. Nguyen refused to review

1   Plaintiff's medical file and denied his requests other than a renewed prescription for
2   one month.  Still in pain, Plaintiff again asked to see a doctor.  He was seen again by
3   Dr. Nguyen on December 13, 2000.  Dr. Nguyen expressly refused to look in Plaintiff's
4   medical file or treat him further.  Plaintiff filed two administrative appeals, and in
5   November and December 2000 wrote to Dr. Winslow, Dr. Nguyen's supervisor,
6   numerous times.  Receiving no response, he asked his sister to contact Dr. Winslow,
7   and again wrote to attorney Steven Fama.
8        In January 2001 Plaintiff learned that his sister had spoken with Plaintiff's
9   correctional counselor, CCI R. Bruce, who had assured her he would call the clinic on
10  Plaintiff's behalf and would also talk to Plaintiff.  Bruce did neither.  Plaintiff later
11  approached Bruce and asked for assistance in getting medical help, but Bruce declined
12  to help him.
13       Having gone without medication for several weeks, Plaintiff asked to see the
14  doctor and was seen by Dr. Nguyen on January 11, 2001.  Dr. Nguyen again refused
15  Plaintiff's requests for a double mattress and further medical attention for his pain.
16  Plaintiff again wrote to Dr. Winslow, who never responded.
17       After further intervention by attorney Fama, Dr. Winslow made an appointment
18  for Plaintiff to see the orthopedic specialist.  On January 31, 2001, the specialist
19  referred Plaintiff to a neurologist, who renewed Plaintiff's double mattress chrono and
20  referred him to a PBSP doctor to have his prescriptions renewed.  On February 2, 2001,
21  Plaintiff was seen by Dr. Nguyen, who ignored Plaintiff's complaints that his pain had
22  worsened.  On February 9, 2001 Plaintiff was again seen by Dr. Nguyen, who refused
23  to prescribe Plaintiff with a medication which had helped him before, and instead
24  prescribed him Tylenol and Motrin.  Plaintiff again wrote to attorney Fama.  As a result
25  of Mr. Fama's intervention, Plaintiff was finally taken to see a neurologist on February
26  27, 2001.  Plaintiff agreed to have surgery performed on him by the neurologist, and

the surgery took place on March 28, 2001.

On May 3, 2001, Plaintiff told the block officer that his back was swollen where the surgery incision had been made and he was in pain. Although Plaintiff was told he would be seen by a doctor, he was not seen that day. The pain became severe, and the next day Plaintiff told correctional officer Barnts that he needed to see the doctor. Barnts told Plaintiff that Nurse Coleman refused to schedule him for an appointment. Later that day, Plaintiff was taken to see Nurse Coleman, who told Plaintiff that she would not schedule him to see the doctor because she had seen him exercising.

On May 9, 2001, Plaintiff was taken to see the non-prison neurologist for his post-operative consultation. The doctor extracted fluid from Plaintiff's back, cleaned the wound, and prescribed him medication, which made him feel better.

Plaintiff names as Defendants Dr. Morrow, Dr. Nguyen, Nurse Coleman, Dr. Winslow, and Correctional Officer Bruce, all of whom he alleges acted with deliberate indifference to his serious medical needs.

**DISCUSSION**

A.   Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. Id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law committed a violation of a right secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988).

B.  <u>Deliberate Indifference to Serious Medical Needs</u>

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. <u>See</u> <u>McGuckin</u>, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." <u>Id.</u> (citing <u>Estelle</u>, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. <u>Id.</u> at 1059-60. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>see</u> <u>McGuckin</u>, 974 F.2d at 1060.

The Court finds that Plaintiff's allegations are sufficient at this initial screening stage to present a cognizable claim for deliberate indifference to his serious medical needs against the named Defendants.

**CONCLUSION**

1. The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, a copy of the <u>amended complaint</u> in this matter (docket no. 7), all attachments thereto, and a copy of this order on Defendants Dr. J. Morrow, Dr. P. Nguyen, Dr. D. Winslow, Nurse C. Coleman, and Correctional Officer R. Bruce, all at Pelican Bay State Prison. The Clerk shall also serve a copy of this order on Plaintiff.

2. In order to expedite the resolution of this case, the Court orders as follows:

    a. No later than **sixty (60) days** from the date they are served with the amended complaint, Defendants shall file a motion for summary judgment or other dispositive motion, or shall notify the Court that they are of the opinion that this case cannot be resolved by such a motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.

Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.

All papers filed with the Court shall be promptly served on Plaintiff.

    b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants' counsel no later than **thirty (30) days** from the date Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case

1   will be dismissed and there will be no trial.

2   See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

3         Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and

4   Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)

5   (holding party opposing summary judgment must come forward with evidence showing

6   triable issues of material fact on every essential element of his claim).  Plaintiff is

7   cautioned that failure to file an opposition to Defendants' motion for summary

8   judgment may be deemed to be a consent by Plaintiff to the granting of the motion, and

9   granting of judgment against Plaintiff without a trial.  See Ghazali v. Moran, 46 F.3d

10  52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir.

11  1994).

12        c.  Defendants shall file a reply brief no later than **fifteen (15) days** after

13  Plaintiff's opposition is filed.

14        d.  The motion shall be deemed submitted as of the date the reply brief is

15  due.  No hearing will be held on the motion unless the Court so orders at a later date.

16     3.  Discovery may be taken in accordance with the Federal Rules of Civil

17  Procedure.  No further Court order under Federal Rule of Civil Procedure 30(a)(2) or

18  Local Rule 16-1 is required before the parties may conduct discovery.

19        For Plaintiff's information, the proper manner of promulgating discovery is to

20  send demands for documents or interrogatories (questions asking for specific, factual

21  responses) directly to Defendants' counsel.  See Fed. R. Civ. P. 33-34.  The scope of

22  discovery is limited to matters "relevant to the claim or defense of any party . . ."  See

23  Fed. R. Civ. P. 26(b)(1).  Discovery may be further limited by court order if "(i) the

24  discovery sought is unreasonably cumulative or duplicative, or is obtainable from some

25  other source that is more convenient, less burdensome, or less expensive; (ii) the party

26  seeking discovery has had ample opportunity by discovery in the action to obtain the

27

28                                   7

1  information sought; or (iii) the burden or expense of the proposed discovery outweighs
2  its likely benefit." Fed. R. Civ. P. 26(b)(2).  <u>In order to comply with the requirements
3  of Rule 26, before deciding to promulgate discovery Plaintiff may find it to his benefit
4  to wait until Defendants have filed a dispositive motion which could include some or
5  all of the discovery Plaintiff might seek.</u>  In addition, no motion to compel will be
6  considered by the Court unless the meet-and-confer requirement of Rule 37(a)(2)(B)
7  and N.D. Cal. Local Rule 37-1 has been satisfied.  Because Plaintiff is incarcerated he
8  is not required to meet and confer with Defendants in person.  Rather, if his discovery
9  requests are denied and he intends to seek a motion to compel he must send a letter to
10 Defendants to that effect, offering them one last opportunity to provide him with the
11 sought-after information.

12     4. All communications by Plaintiff with the Court must be served on
13 Defendants' counsel once counsel has been designated, by mailing a true copy of the
14 document to Defendants' counsel.

15     5. It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the
16 Court and the parties informed of any change of address and must comply with the
17 Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this
18 action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

19     6. Extensions of time are not favored, although reasonable extensions will be
20 granted.  Any motion for an extension of time must be filed no later than **ten (10)** days
21 prior to the deadline sought to be extended.

22     IT IS SO ORDERED.
23  DATED:  1/19/07
                                          JEREMY FOGEL
24                                        United States District Judge